## DALY v. J. M. HORTON ICE CREAM CO.

(Supreme Court, Appellate Division, Second Department.   February 11, 1915.)

1. MASTER AND SERVANT (§ 287*)—ACTION FOR INJURY—QUESTION FOR JURY.

> In an action for a servant's death, brought under the Labor Law (Consol. Laws, c. 31), evidence *held* to make the alleged negligence of defendant's superintendent in ordering deceased to take in the slack of a cable between an auto truck and its tow, and in signaling the towing car to start, a question for the jury.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034. 1045, 1051, 1052, 1054–1067; Dec. Dig. § 287.*]

2. NEGLIGENCE (§§ 9, 10*)—ACCIDENT.

> No liability for negligence attaches to a party when, in the prosecution of a lawful act, injury to another is caused by a pure accident; nor can one be said to be negligent merely because he fails to make provision against an accident which he could not be reasonably expected to foresee.

> [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 11, 12; Dec. Dig. §§ 9, 10.*]

3. NEGLIGENCE (§ 136*)—QUESTION FOR JURY—ACCIDENT.

> Whether a given accident is "a pure accident" is generally a question for the jury, unless on the whole case the element of the imputed liability is so clearly absent that it becomes a question of law, and whether an accident was one which a man of reasonable care and prudence was reasonably expected to foresee is ordinarily for the jury.

> [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

Appeal from Trial Term, Kings County.

Action by Catherine Daly, as administratrix of the estate of Bernard Lee Daly, deceased, against the J. M. Horton Ice Cream Company. Judgment for plaintiff, motion for new trial denied, and defendant appeals.   Judgment and order affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Walter L. Glenney, of New York City, for appellant.

M. B. Hoffman, of Brooklyn, for respondent.

CARR, J.   [1]  The plaintiff has recovered a verdict for $3,000 for the death of her decedent through the alleged negligence of the defendant, his temporary employer.   The action was brought under the Labor Law, and a notice had been served charging sufficiently negligence on the part of a superintendent or foreman, one Baldwin.   The whole conflict on the trial was whether the plaintiff's proofs raised a question for the jury as to the alleged negligence of Baldwin.   Of course, after the verdict, the further question arose as to the weight of evidence, and both questions are now urged upon this appeal.   The only exceptions to the charge relate to the question whether the case should have been submitted to the jury as within the Labor Law.   No exceptions to the admission or exclusion of evidence are urged in the appellant's brief.

The accident through which the decedent met his death happened under the following circumstances: In the early morning of January

30, 1914, two motor trucks of the defendant became mired on Avenue T, a dirt road in the borough of Brooklyn, at a point near Ocean Parkway, and news was sent to the garage of the defendant. Baldwin, the defendant's superintendent, with a couple of men, including the decedent, who was hired only temporarily for this job, started in a motor truck of the defendant to the locality in question. When they got there, they found one truck near Ocean Parkway, and one farther behind. After much labor, they succeeded in extricating the truck nearer the Parkway, and they sent it home. The mode of extrication was to hitch a wire cable to the mired truck and to pull it out by the force of the third motor truck, in which they came. This pulling truck backed across Ocean Parkway, which had a hard surface. They then went to work on the second mired truck. To this they hitched the wire cable at its rear axle, the further end being hitched to the front fender of the pulling or backing truck. In the process of extrication the power was "put on" on both trucks. . All of this was done in the presence and by the direction of Baldwin. The towed truck ran up on the cable, causing a slack of the cable, a part of which came under the truck that was being towed.

The claim of the plaintiff is that Baldwin gave orders to the decedent and others of the helpers to pick up the "slack," so as to withdraw it from under the towed truck and to straighten it out, and that when the decedent, by stooping down, got hold of the cable, Baldwin gave orders to the towing machine to start backing, and the result was a sudden tightening of the former "slack," which threw the decedent into the air and caused the injuries from which he died a few hours afterwards, and likewise injuring another man, but less severely. The contest in the testimony centered around the question whether Baldwin gave any directions to the decedent to pick up the slack cable, or gave any signal to start the towing car when the cable was in the hands of the decedent and the others. There was proof introduced by the plaintiff to show that he did both. Baldwin denied the direction and the giving of the signal to the towing car, and supporting testimony was given by several of the employés of the defendant. Shortly after the accident, a police officer came upon the scene, one Herting. Baldwin was asked on cross-examination if he had not made a statement to this officer as to the happening of the accident which was in conflict with his actual testimony at the trial, and he denied having made the statement. Herting was called on rebuttal, and testified that Baldwin had said to him:

"I gave the order to the car to back up, and it backed up so quick that the cable tightened and threw Mr. Daly over."

A similar situation exists as to the defendant's witness Mintz, in regard to contradictory statements before trial and on the witness stand as to alleged statements made to one Johnston. No point is made on this appeal as to the admissibility of this evidence on rebuttal. As to directions of Baldwin to the decedent and the giving of the signal to the towing car, there was a fair question for the jury, and we should not disturb their findings upon the sharp conflict of testimony as it appears in this record.

[2] The appellant argues, however, that on any aspect of the case

the happening involved in this controversy was a pure accident, upon which no claim of liability on the part of the defendant can be made to rest. It is sought to bring this case within the doctrine applied in Paul v. Consolidated Fire Works Co., 212 N. Y. 117, 105 N. E. 795. In the opinion of Bartlett, C. J., in that case, it was said:

"In accidents of employment, especially where the injuries are serious, there is a tendency always to impute blame to some one. The servant blames his master; the master attributes contributory negligence to his servant. We are apt to forget that accidents are not infrequent, for which no one is really to blame at all."

In that opinion the court repeated with approval an extract from Halsbury's work on the Laws of England, in which it is said:

"No liability for negligence attaches to a party when in the prosecution of a lawful act injury to another is caused by a pure accident; nor can any one be said to be negligent merely because he fails to make provision against an accident which he could not be reasonably expected to foresee."

The standard of any one's behavior, where the law of negligence is involved, is not easy to define with nicety. See Markby's Elements of Law (6th Ed.) 678 to 685.

[3] Whether a given accident is "a pure accident" is generally a question for the jury, unless on the whole case the element of imputable liability is absent so clearly that it becomes a question of law for the court. There may be an accident which is not a "pure" casualty, and yet liability may not attach, because the consequences of the act or omission may be such that the hypothetical man of reasonable care or prudence may not "be reasonably expected to foresee," and this again is ordinarily a question for the jury, which is the legal tribunal to enforce the standard. So it is that every case in negligence must stand upon its own facts, as every tub must stand upon its own bottom. Assuming the facts of this case to be as found by the jury, we cannot say as a matter of law that, if Baldwin put the decedent in a position of danger, he was not required to take some steps with regard to the danger reasonably foreseeable. A sudden tightening of the cable would have necessarily some effect—readily foreseeable—on the persons holding it, which might very easily endanger their safety. An omission to take some precautions against this danger on the part of one charged with a legal duty, even though the omission was purely heedless and the full extent of its consequences were not foreseen, may well serve as a basis for the imputation of legal negligence.

I recommend that the judgment and order be affirmed, with costs. All concur.