EDWARD BEEDENBENDER, Respondent, v. MIDTOWN PROPERTIES, INC., Defendant, and STEPHEN MESSANA et al., Doing Business as ITALIAN KITCHEN, Appellants.

First Department, June 28, 1957.

*John J. Cunneen* of counsel (*Caverly, Diamond, Dwyer & Lawler,* attorneys), for appellants.

*Norman Bard* of counsel (*Joseph P. Kopelman* and *Max Jackrel* with him on the brief; *Jackrel & Kopelman,* attorneys), for respondent.

BOTEIN, J. At 3:30 A.M. one morning, plaintiff, a policeman, was on duty at the corner of Eighth Avenue and 46th Street. While talking to another patrolman he saw Benny Bates, the porter and night watchman of a nearby restaurant, the Italian Kitchen, motion to them. Joined by a third policeman, they spoke to Bates, who told them he had seen a prowler behind the restaurant, climbing up the fire escape in the next yard. Bates asked them to accompany him and led the way through the restaurant to the rear. There was no one in the backyard of the Italian Kitchen, but as they flashed their lights on the fire escape of the adjacent property, owned by defendant Midtown Properties, Inc., they saw a movement which they took to be that of a man.

Plaintiff walked over to the fence between the properties, which was about seven feet high and consisted of several old wooden doors that had been joined together. He attempted to open one of the doors, but it had no knob and was also obstructed by a tub laden with debris, which he could not move. As Bates stood by, watching, plaintiff climbed on some garbage cans that were in front of the fence, put his flashlight in his pocket, and straddled the top of the fence, hesitating just long enough to observe a strip of ground along the base of the fence on the other side, which blended into the darkness beyond. Letting himself down on the other side, plaintiff released his hold on the fence and reached for the flashlight in his pocket. As he did so he lost his balance, his feet went out from under him, and he toppled backwards off a narrow ledge into the areaway below. He landed on his back and spine, thus sustaining the injuries for which he sues.

Most of the backyard of the defendant Midtown Properties, Inc. opened on a subbasement some 18 to 20 feet below the level of the backyard of the Italian Kitchen. A narrow L-shaped cement walk skirted the edge of the sunken areaway, running

from the one door in the fence designed to afford access from the Midtown property through the Italian Kitchen backyard to the street beyond. This walk and the 18-inch wide ledge running parallel to the fence — the ledge from which plaintiff fell — were the only parts of the Midtown backyard on the same level as the Italian Kitchen backyard.

Plaintiff brought action against both Midtown and the proprietors of the Italian Kitchen, alleging that they were negligent in maintaining the fence in a defective condition, in obstructing a required means of ingress and egress, and in maintaining a dangerous trap on the premises. After trial the jury rendered a verdict in favor of defendant Midtown but against the defendants Messana, who owned the Italian Kitchen, and the latter defendants appeal from the judgment entered thereon.

Throughout the course of this action plaintiff has placed great stress on the alleged breach by the appellants of their statutory duty to keep the door in the wooden fence between the properties free from obstructions. Plaintiff produced several witnesses to support this contention, and the court charged the jury that " If you find that that door or means of egress or exit was obstructed by the Italian Kitchen " " or any of its servants or employees you will be justified in finding that particular defendant guilty of negligence." Appellants duly excepted to this charge.

Plaintiff sought to establish appellants' breach of a statutory duty by reliance on the Labor Law and the Administrative Code. Subdivision 9 of section 273 of the Labor Law imposes no obligation on appellants to keep the fence door free from obstruction, for it requires the factory building owner to provide lighted and unobstructed access directly from his fire escape to the street without going through an adjoining property. Merely because Midtown had constructed fire escapes on the rear of its building, in order to secure approval of a partial change to factory use, appellants were not required to afford it an easement of access through their property (*Hoffman* v. *Fraad,* 130 Misc. 667, affd. 224 App. Div. 717).

While the Administrative Code (§ C26–273.0, subd. d, par. 7) permits egress from fire escapes on the rear of buildings to the street through the yard of an adjoining building, that section explicitly provides that " Egress to an adjoining property by means of a gate or door through a fence shall be inacceptable unless the written consent of the owner of such property is obtained and filed with the superintendent ". Plaintiff produced no proof that appellants ever filed such written consent to the

use of their property in order to afford access from the Midtown fire escapes to the street. Plaintiff argues that since a certificate of occupancy was issued to Midtown, there is a presumption that all the requirements of the various statutes were complied with. Certainly appellants are not bound by any presumptions attaching to a certificate of occupancy to which they were not parties. If such a presumption could arise, it would be rebutted by the fact that Midtown's architect, in a letter to the Department of Housing and Buildings, had requested issuance of the certificate of occupancy despite the absence of written consent by the Italian Kitchen to the use of its property as a passageway, on the ground that the Midtown building already had two other and independent means of egress leading directly to the street.

Since appellants were not legally obliged to give access to Midtown, and the door in the fence was not designed as a means of egress from the Italian Kitchen property, appellants did not violate section C26–301.0 of the Administrative Code by obstructing a door they were under no obligation to provide at all. The obligations imposed by the article in which that section appears apply to the building owners, and not to the owners of adjacent premises, except where such adjacent owners are specifically mentioned. We need not consider, therefore, the question of whether the plaintiff was within the class intended to be benefited by such statutes, as a person who was not seeking egress from the Midtown building to the street.

Appellants were not shown, therefore, to have owed any statutory duty with respect to the door in the fence. Hence, the court was in error in charging that appellants had a duty to keep the fence door unobstructed. This alone would necessitate a reversal of the judgment, since under the charge the jury must necessarily have concluded that the door was obstructed, and that it was obstructed on the appellants' side. There were, however, additional errors in the charge which must be adverted to.

Absent any showing of a breach of statutory duty, plaintiff can prevail only upon proving appellants' breach of a common-law duty. The nature of that duty is dependent, of course, upon the status which the plaintiff occupied. Certainly plaintiff was not a trespasser to whom only minimal obligations would be owing, for he entered upon appellants' premises rightfully. It is equally clear that as he did not enter upon the property for his own private purposes or convenience, he was more than a bare licensee (*Meiers* v. *Koch Brewery,* 229 N. Y. 10; Restatement, Torts, § 331).

The court below was not warranted, however, in charging the jury that plaintiff, as a police officer, was an invitee to whom appellants owed the duty of keeping their premises, including the fence door, in a reasonably safe and proper condition. The *Meiers* case is not authority for the proposition that a policeman or fireman coming on the premises in the course of duty is an invitee. The Court of Appeals in that case expressed unwillingness to rest its determination of the duties owed to such persons on the existence of an invitation, express or implied (p. 14). Again, in *Maloney* v. *Hearst Hotels Corp.* (274 N. Y. 106) it refused to find that the duty owed to a fireman responding to an alarm was the same as that owed to an invitee, and brushed aside any notion that the *Meiers* case had gone that far.

Policemen and firemen do not readily fit the categories either of licensee or invitee. Both licensee and invitee enter upon the premises with the consent of the owner — one is tolerated, the other solicited. In the case of policemen and firemen, consent is irrelevant. It makes no difference if their entrance is permitted or invited since, if the conditions calling for their entry exist, they enter the premises as of right. The landowner is not free to give or withhold his consent, as he may with invitees and licensees, nor are the policemen and firemen free to enter or refrain from entering, as they may choose. They act neither by permission nor invitation. They act by command (*Meiers* v. *Koch Brewery, supra,* p. 15).

Hence policemen and firemen must be treated neither as invitees nor as licensees, but as a special class, *sui generis,* privileged to enter the land for a public purpose irrespective of consent. Whether they have entered to rout a prowler or to fight a fire on the same or on the adjacent premises, whether they have been summoned by the owner or enter of their own volition, the duties owed them do not vary. The duties are twofold. First, the owner is obliged to use reasonable care to keep in safe condition those parts of the premises which are utilized as the ordinary means of access for all persons entering thereon (*Meiers* v. *Koch Brewery, supra*). Second, if the owner knows of the presence on the premises of officially privileged persons, such as firemen or policemen, is cognizant of a dangerous condition thereon, and has reason to believe that they are unaware of the danger, he has a duty to warn them of the condition and of the risk involved (*Jenkins* v. *313–321 W. 37th St. Corp.,* 284 N. Y. 397; *Schwab* v. *Rubel Corp.,* 286 N. Y. 525). The owner owes no duty to those privileged to enter irrespective of consent to safeguard those parts of his property not ordinarily utilized for passage through the premises, or to discover

potential dangers therein, for the entry thereon by such persons under unusual conditions at any hour of the day or night is not reasonably foreseeable. Appellants' backyard fence was not the ordinary exit or entrance from their premises. Hence, there cannot be spelled out any common-law duty on the part of the appellants to maintain that fence, and the door in it, at all times as a safe passageway so that in an emergency plaintiff could pass readily from one backyard to another.

Any duty of appellants must rest upon the obligation to warn. It cannot be said, however, that the duty to warn existed as a matter of law. The very existence of that duty was a question of fact for the determination of the jury. Before it could be found that such a duty existed, the jury would first have to find that the difference in levels of the adjoining backyards presented an unusual hazard; that Bates, acting as appellants' agent, knew of the hazard; and that he had reason to believe that plaintiff, even from his vantage point looking over the fence, would not discover the danger for himself.

Because plaintiff did not proceed initially upon the theory of a duty to warn, the trial court excluded the testimony of conversations between plaintiff and Bates. Then, when the court charged the jury that there was a duty to warn, the jury had no evidence upon which to determine whether or not a warning had been given.

Even if the jury were to find that warning should have been given, and that it was not, there would still remain for its determination, among other things, the question of whether the failure to give warning was in fact the proximate cause of the accident. With the knowledge thus imparted plaintiff might still have climbed over the fence, stood on the ledge, lost his balance, and have fallen.

The judgment in favor of the plaintiff and against the defendants-appellants should be reversed, and a new trial ordered.

FRANK, J. (concurring). I concur in result and agree that the judgment must be reversed and a new trial ordered. I cannot, however, accept the thesis that policemen, firemen and others charged with duties affecting public safety and health may not, under any circumstances, be invitees in entering upon private property. I do not believe that *Meiers* v. *Koch Brewery* (229 N. Y. 10) so holds. In *Maloney* v. *Hearst Hotels Corp.* (274 N. Y. 106, 110), the Court of Appeals expressly reserved the question "for further consideration", since it was unnecessary for the decision there. Under the circumstances in this case, the ques-

tion as to whether plaintiff may have been an invitee may well be one for submission to the jury.

PECK, P. J., BREITEL and RABIN, JJ., concur with BOTEIN, J.; FRANK, J., concurs in the result in opinion.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.