ROBERT BOERIO, Respondent, *v.* HAISS MOTOR TRUCKING CO., INC., Appellant.

First Department, February 3, 1959.

*James J. McLoughlin* of counsel (*Anthony J. De Cicco*, attorney), for appellant.

*Mathew Vener* of counsel (*Louis Lovesky* with him on the brief; *Mathew Vener*, attorney), for respondent.

M. M. FRANK, J. The defendant appeals from a judgment in favor of the plaintiff upon a jury verdict. The action, for personal injuries, was grounded on common-law negligence.

The plaintiff, Robert Boerio, was employed as an electrician and lineman by Jandous Electrical Company. The defendant

was the owner of a "line truck" equipped with a boom, a winch and a drum and cable, which it had delivered under lease to Jandous two days before the occurrence, to be used to install or remove lighting poles. Jandous had a contract to perform this work along the Van Wyck Expressway. The truck was assigned to Boerio, a man named Rush, and their foreman, Doktor, all working as a team. Rush, a witness for the plaintiff, testified that two days before the accident, when the truck was delivered, he noticed that the cable was "kinked". He and Boerio unreeled about 150 feet of it, while Doktor operated the motor, in an attempt to straighten the cable so that it would wind smoothly over the drum. The effort was to no avail, for the cable, which was oversized in diameter, continued to twist and bunch on the drum, so that it tended to slither onto the axle.

Rush testified that after the cable was rewound he said to Doktor, "I can't run it up straight". Doktor replied, "We can't do nothing with this cable, so let it go the way it is". Doktor, the foreman, denied that the cable was defective, that it slipped off the drum or that it was unreeled to straighten kinks. He was never asked whether the conversation testified to by Rush had taken place.

Although Boerio said that he saw and heard the cable slip once or twice, he gave no testimony concerning the attempt to remove kinks by unwinding it, nor about any instructions from Doktor to continue the use of the equipment despite its defects.

The three men continued to work with the equipment for two days, during which the cable slipped off the drum a number of times. Finally, as a pole was being hoisted off the ground, the cable slipped, the pole dropped across the plaintiff's leg, and he was seriously injured and permanently disabled.

The defendant asserts that the plaintiff was contributorily negligent, as a matter of law, in that he continued to expose himself to the known danger for a period of days after becoming fully aware of the hazardous condition of the equipment. In support of this contention, the defendant cites cases like *Utica Mut. Ins. Co.* v. *Amsterdam Color Works* (284 App. Div. 376, affd. 308 N. Y. 816) and *Shields* v. *Van Kelton Amusement Corp.* (228 N. Y. 396), wherein the complaints were dismissed because the plaintiffs were held to be guilty of contributory negligence as a matter of law.

Relying upon *Broderick* v. *Cauldwell-Wingate Co.* (301 N. Y. 182, 186), the plaintiff argues that he may not be charged with contributory negligence as a matter of law "because he

followed instructions of his foreman in using equipment that had been furnished and which, under some circumstances might be dangerous.''

In *Broderick*, the Court of Appeals held, in substance, that the interpretation to be given to the instructions issued by the defendant's superintendent was for the jury, and it was also required to determine whether the defendant had assumed such control of the plaintiff or given him such assurance of safety as to relieve him from the bar of contributory negligence.

The problem presented is whether the rule enunciated in *Broderick* and the decisions upon which it was predicated should be applied here. The essential distinction between that case and this is that here the direction to continue to work came, if at all, from the plaintiff's foreman, Doktor, and not from the defendant, the supplier of the equipment charged to have been defective.

Generally, one who supplies dangerous or defective equipment is responsible for the consequences that are foreseeable and proximately related. If another, in using that equipment, is contributorily negligent and injury results, the supplier is nonetheless guilty of negligence. His wrongful act is not obliterated by the negligence of the user. Although contributory negligence does not lessen the negligence of the supplier, it bars recovery from him by the user of the dangerous or defective apparatus.

In *Thomas v. Solvay Process Co.* (216 N. Y. 265), the Court of Appeals held that whether a foreman employed by the defendant acted reasonably in failing to call plaintiff's attention to a dangerous condition created by the demolition of an engine house, as well as the claim that the plaintiff was contributorily negligent in failing to observe the condition before he entered the structure, were jury questions.

Thereafter, in *Zurich Gen. Acc. & Liability Ins. Co. v. Childs Co.* (253 N. Y. 324), the Court of Appeals, per CARDOZO, Ch. J., held that it was for the jury to decide whether the plaintiff in knowingly using a defective elevator assumed a foreseeable risk attendant thereon or whether the assurance he received from the defendant's employee negated his acceptance of the danger.

Citing these cases and others, the Court of Appeals, in *Broderick*, said (p. 188): '' defendant's contention that plaintiff was guilty of contributory negligence as a matter of law cannot be sustained. It appears established that when a person in the capacity of a superior assumes control over a workman on

a job and directs him to proceed under circumstances recognizable as dangerous, the subordinate workman has little, if any, choice in the matter but to obey it and, if he stays within the limits of the superior's instructions and is injured, he may not be penalized by a claim of contributory negligence as a matter of law.''

The common denominator in these cases is, of course, the fact that an employee of the defendant either gave an assurance, withheld a warning, or directed the plaintiff to continue to work. As indicated, the distinction in the case at bar stems from the fact that the direction to continue to work came, if at all, from the plaintiff's foreman, and not from the defendant, the supplier of the equipment. We think that the difference, without more, should not disable the plaintiff from a recovery. If logic and reason justify the rule that an order to continue to work, coming from an authorized representative of a negligent defendant not employing the plaintiff, is sufficient to relieve the injured party from the onus of contributory negligence, then, certainly, a direction from his own employer is even more meaningful. A workman is under a greater duty to obey an order issued by his employer than to follow the direction of a stranger to the master-servant relationship. It would place a premium on the negligence of a defendant to permit it an escape from its own liability because the plaintiff was directed to continue his work by his employer's foreman rather than the defendant's representative.

Restatement, Torts (§ 408, comment c), declares that a lessor of equipment intended for immediate use, who discloses its actual condition, '' does not relieve himself from liability by such disclosure if the chattel is one which cannot be used with safety even by one knowing its true condition ''.

'' It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye.'' (*Munsey* v. *Webb,* 231 U. S. 150, 156; see, also, *Robert* v. *United States Shipping Bd. Emergency Fleet Corp.,* 240 N. Y. 474, 477; *Zurich Gen. Acc. & Liability Ins. Co.* v. *Childs Co.,* 253 N. Y. 324, *supra.*)

It need not be emphasized, of course, that this view does not change the rule that the conduct of a plaintiff must be that of a reasonably prudent person under the factual circumstances surrounding an occurrence. One may not, even under an order issued by another, act with reckless disregard of his own safety. Wanton or deliberate exposure to an obvious hazard, in utter

disregard of reasonable prudence, cannot be justified by mere obedience to an order or an assurance of safety given by another.

The plaintiff's reliance upon the theory discussed herein to sustain the judgment, while not misplaced, presents several difficulties. The record discloses that the case was neither tried nor submitted to the jury upon that theory. There was no proof that an authorized representative of the defendant was at the scene at any time. It should be borne in mind that Doktor was employed as foreman by Jandous, not by the defendant, and the only claim of an order to continue the use of the equipment, if given at all, must be found in the conversation between Rush and Doktor. Whether that conversation can be so interpreted is a fact question, and no request to charge the jury in that regard came from either side.

There are other disputed issues which were not clearly delineated to the jury. For example, whether Doktor's statement can be construed to be an order from the plaintiff's superior to continue to work with the defective equipment, and whether the Rush-Doktor conversation was sufficient to relieve an employee otherwise guilty of contributory negligence, are fact questions. Was Doktor aware of the defective condition of the equipment? If so, was Boerio cognizant of the Rush-Doktor conversation? If he was, did it include him and did it absolve him from further responsibility? A jury would also be required to determine, under appropriate instructions, whether Boerio had the duty to complain about the dangerous state of the apparatus or to desist from using it, or both. Only if these issues are resolved in favor of the plaintiff, by the triers of the facts, would a verdict for him find support in the evidence.

The case was submitted to the jury upon an eminently fair charge to which no material exceptions were taken. Neither side, however, made appropriate requests to submit the issues to the jury upon the theory discussed herein. Thus the general verdict rendered could not have been based upon those issues. Under the circumstances, there should be a new trial, in the interest of justice, so that the facts may be fully explored and all the issues submitted to a jury, after appropriate instructions from the court (*Klonick Corp.* v. *Berkshire Life Ins. Co.,* 277 App. Div. 1158; *Lee* v. *Ithaca Masonic Temple Corp.,* 269 App. Div. 718; *Storms* v. *City of Fulton,* 263 App. Div. 927).

The judgment should be reversed on the facts and the law, and a new trial ordered, in the interest of justice, with costs to abide the event.

234

McNally, J. (dissenting). I dissent in part and vote to reverse and dismiss the complaint. The record establishes the plaintiff to have been contributorily negligent as a matter of law in that he did not use ordinary care in continuing to expose himself to a known danger for at least two days after becoming aware of the dangerous condition of the equipment. (*Utica Mut. Ins. Co.* v. *Amsterdam Color Works,* 284 App. Div. 376, affd. 308 N. Y. 816.)

Breitel, J. P., and Stevens, J., concur with M. M. Frank, J.; McNally, J., dissents in part and votes to reverse and dismiss the complaint in opinion, in which Valente, J., concurs.

Judgment reversed on the facts and on the law, and a new trial ordered, with costs to abide the event.