Hon. Dennis V. Tobolski County Attorney, Cattaraugus County
You request our opinion as to the jurisdiction of the fire fighting service when responding to a fire alarm at a school. There are three questions raised:
1. After a fire alarm at a school may the principal refuse admission to the fire fighting service or, if firefighters have entered the building, may he order them to leave before a determination by the fire chief or his designee that the premises to which the fire alarm related are safe for occupancy?
2. May a school principal, with or without the approval of or directions from his board of education, make the determination after a fire alarm whether the school is safe to be occupied regardless of whether the fire chief or his designee has inspected the premises and found them safe?
3. Does it make any difference in either answer if a fire alarm was a false alarm? (For our purpose the term "false alarm" includes a deliberate false alarm in the traditional sense and also an alarm caused by error, accident or malfunction of equipment.)
 "In entering upon premises in the performance of their duties, firemen and policemen proceed neither as invitees nor licensees, but as a special class, sui generis, of persons privileged to enter for a public purpose irrespective of the consent of the owner." McQuillin Mun Corp (3d Ed) § 45.13a (citations omitted).
 "The right of firemen to enter a burning building without a warrant to fight the fire is clearly recognized. Moreover, because fire officials are charged not only with extinguishing fires but with finding their causes, once in a building for the purpose of fighting a fire fighters may seize evidence of arson that is in plain view. In addition, they may summon police officers to make a warrantless entry to assist them in investigating suspicious origins of the fire." McQuillin Mun Corp (3d Ed) § 45.14, pocket supplement (citations omitted).
 "Here, assume there was no invitation, yet the plaintiff rightfully enters the premises. His right is not based on consent. No consent is necessary. No refusal of consent would avail. There is no implication as to what was intended by permission, for none was given. Certainly, not by the owner, unless by a strained construction of the facts he is held to have given it because the law requires him to give it. But even if so, consent is but one side of the shield. Acceptance is the other. The plaintiff never voluntarily accepted permission to enter with the consequences that follow. As to him there was no consent. There was a command." Meiers v Koch Brewery, 229 N.Y. 10 at p 15 (1920).
 "Policemen and firemen do not readily fit the categories either of licensee or invitee. Both licensee and invitee enter upon the premises with the consent of the owner — one is tolerated, the other solicited. In the case of policemen and firemen, consent is irrelevant. It makes no difference if their entrance is permitted or invited since, if the conditions calling for their entry exist, they enter the premises as of right. The landowner is not free to give or withhold his consent, as he may with invitees and licensees, nor are the policemen and firemen free to enter or refrain from entering, as they may choose. They act neither by permission nor invitation. They act by command" (Meiers v Koch Brewery, supra, p 15).
 "Hence policemen and firemen must be treated neither as invitees nor as licensees, but as a special class, sui generis, privileged to enter the land for a public purpose irrespective of consent. Whether they have entered to rout a prowler or to fight a fire on the same or on the adjacent premises, whether they have been summoned by the owner or enter of their own volition, the duties owed them do not vary." Beedenbender v Midtown Properties (4 A.D.2d 276 at p 281 [1st Dept, 1957]).
General Municipal Law provides:
"§ 204-d. Duties of the fire chief
 "The fire chief of any fire department or company shall, in addition to any other duties assigned to him by law or contract, to the extent reasonably possible determine or cause to be determined the cause of each fire or explosion which the fire department or company has been called to suppress. He shall contact or cause to be contacted the appropriate investigatory authority if he has reason to believe the fire or explosion is of incendiary or suspicious origin."
It was stated in our opinion reported in 1958 Op Atty Gen [Inf] 52 (copy of the full text enclosed):
 "In my opinion, when your fire department responds to a call from the school, the fire company, under the supervision of the chief engineer, should be in charge of fighting the fire. Section 176-a of the Town Law provides that the chief engineer of the fire department of a fire district, subject to direction of the board of fire commissioners, shall have control of members of the department at all fires, and supervision of the engines, fire trucks and other apparatus and equipment used for extinguishment of fires."
The Penal Law has two provisions applicable to your inquiry:
"§ 195.05 Obstructing governmental administration
 "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.
 "Obstructing governmental administration is a class A misdemeanor."
"§ 195.15 Obstructing firefighting operations
 "A person is guilty of obstructing firefighting operations when he intentionally and unreasonably obstructs the efforts of any fireman in extinguishing a fire, or prevents or dissuades another from extinguishing or helping to extinguish a fire.
 "Obstructing firefighting operations is a class A misdemeanor."
A fire alarm commences a train of events that cannot be averted by many who are involved. Normal authority and individuals usually in control of areas and activities are suddenly relegated to a minor role or even excluded from participation. The fighting of fires to avoid catastrophic consequences is so fundamental a protection to society that the fire fighting force is in absolute command at the scene of a fire emergency. Firefighters may enter any premises and building to find and fight a fire there or on nearby property. They may enter where necessary and by the use of force if a suitable or open entryway is not available. The urgency of the event brooks no delay. A person in charge of premises, such as a school principal (or, for that matter, the board of education) cannot prevent firefighters from entering a school if an alarm of fire at the school has been received. The firefighters must stay at the scene until their officers have determined that the fire is out. The premises cannot be occupied until the fire fighting force finds them safe for occupancy. Until a determination of safety has been made by the fire chief or his designee, the school principal has no authority in the premises. We draw your attention to the sections of the Penal Law quoted above and point out that a school principal as well as a factory manager, bank president or store owner may be charged with misdemeanors.
The fact that an alarm is a false alarm has no bearing upon the foregoing. When a fire alarm occurs, eo instante there is a fire emergency and all rights and duties revert to those which exist in case of a conflagration. Those rights and duties continue in effect until the fire chief or his designee find that there was a false alarm and/or that the premises are free from immediate danger of fire and can be occupied with safety.
In our opinion:
1. After a fire alarm at a school the principal cannot refuse admission to firefighters or, after they are in the building, cannot require them to leave until the fire chief or his designee certifies that the fire is out and the building is safe for occupancy.
2. After a fire alarm at a school the principal has no authority or jurisdiction to determine that a fire is out and the building is safe for occupancy. That is a function reserved to the fire fighting force.
3. The same conclusions apply even if the alarm was a false alarm.
We suggest that if there is any thought that a misunderstanding may exist as to the seat of authority if a fire emergency does occur, it would be advisable for the board of fire commissioners, or other similar body, to meet with the board of education to clarify the issue. This may save injury and property, possibly even lives, in case of a serious fire.