Pamela **PRESTON**, Plaintiff,

v.

**MARTIN BREGMAN PRODUCTIONS, INC. and MCA–Universal City Studios, Inc., Defendants.**

No. 89 Civ. 6809 (LLS).

United States District Court, S.D. New York.

May 29, 1991.

---

Dennis Adjei–Brenyah, New York City, for plaintiff.

Stephen F. Huff, Andrew H. Bart, Steven M. Rabinowitz, Pryor, Cashman, Sherman & Flynn, New York City, for defendants.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff Pamela Preston asserts that she was shown in the motion picture "Sea of Love" without her consent, in violation of her rights under New York law. Defendant Martin Bregman Productions, Inc. is a producer and defendant MCA–Universal City Studios, Inc. is the owner and a producer of that motion picture. They move pursuant to Fed.R.Civ.P. 56(b) for summary judgment dismissing the complaint. The court has viewed "Sea of Love" in connection with this motion.

## BACKGROUND

"Sea of Love" is a murder mystery set in New York City. In it, police seek an unidentified woman who appears to have been selecting her murder victims from personal advertisements in a newspaper. A police officer investigating the case becomes romantically involved with a suspect who responded to an advertisement placed by the police in an effort to catch the killer.

Plaintiff contends that she appears in a scene shown during the picture's opening credits. That "title sequence" presents a series of night scenes in New York City showing (in order of appearance) the Brooklyn Bridge, an aerial view of Manhattan, Times Square, a newsstand, a hot dog stand, an X-rated movie theater, two prostitutes (of which plaintiff says she is one) soliciting along a row of cars, a restaurant, and finally another restaurant.

Although defendants dispute whether the woman depicted in the relevant segment is plaintiff, her identity is conceded for the purpose of this motion. That portion of the film was taken from a moving vehicle in low light, and shows a woman "scantily dressed, showing her full face and entire body as she walks on the public street in the City of New York." (Complaint ¶ 7). It lasts approximately nine seconds and the face of the woman is visible for about 4½ seconds. (Joint Pretrial Order ("JPO") Agreed Finding ¶ 7).

Plaintiff contends that "Sea of Love" "depicts aspects of life in New York City which includes [sic] promiscuous sex, loneliness, deception and their interaction in the lives of the characters." (JPO Plaintiff's Proposed Finding ¶ 4(b)). She asserts that the title sequence establishes the theme for the motion picture. (Id. ¶ 4(a)).

Neither plaintiff nor anything regarding prostitution appears later in the film.

Plaintiff alleges that defendants intentionally and surreptitiously filmed her, causing her mental anguish and emotional distress. (Id. ¶ 3). She asserts claims under New York's Civil Rights Law, as well as for conversion and intentional infliction of emotional distress.

## DISCUSSION

### I. Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989).

[1] If a motion for summary judgment is properly supported, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). The materiality of facts in this diversity action is determined by New York State substantive law. *See id.* at 248, 106 S.Ct. at 2510.

### II. Civil Rights Law

Plaintiff asserts that defendants' use of her picture in "Sea of Love" violates section 51 of New York's Civil Rights Law, which states in pertinent part:

Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use....

N.Y.Civ.Rights Law § 51 (McKinney Supp. 1991).

Liability under section 51 is limited, however, by the doctrine of incidental

use, under which merely incidental or isolated uses of a name, picture or portrait are not actionable. *See Damron v. Doubleday, Doran & Co.*, 133 Misc. 302, 231 N.Y.S. 444, 446 (Sup.Ct.N.Y.Cty.1928), *aff'd without op.*, 226 A.D. 796, 234 N.Y.S. 773 (1st Dep't 1929). Whether a use falls within this exception to liability is determined by the role that the use of the plaintiff's name or likeness plays in the main purpose and subject of the work at issue. *See Ladany v. William Morrow & Co.*, 465 F.Supp. 870, 881 (S.D.N.Y.1978); *Delan by Delan v. CBS, Inc.*, 91 A.D.2d 255, 458 N.Y.S.2d 608, 614 (2d Dep't 1983); *DeGregorio v. CBS, Inc.*, 123 Misc.2d 491, 473 N.Y.S.2d 922, 924 (Sup.Ct.N.Y.Cty.1984).

■ Here, plaintiff's appearance is "of that fleeting and incidental nature which the Civil Rights Law does not find offensive." *University of Notre Dame v. Twentieth Century–Fox Film Corp.*, 22 A.D.2d 452, 256 N.Y.S.2d 301, 304 (1st Dep't), *aff'd*, 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965). She is shown in only 9 seconds of this full-length motion picture, for 4½ seconds of which her face is visible, in the opening title scenes before the plot begins or any of the characters appear. Her appearance contributes nothing of significance to the movie's story line, although it is incidental in setting the atmosphere for the crime and police material that follows.

The statute requires a more direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work.

For example, in *Ladany v. William Morrow & Co.*, plaintiff was referred to (unflatteringly, he felt) on 13 out of 458 pages of a book on the 1972 Munich Olympics massacre. One of 101 characters, he was depicted only in one early scene. The court held that use of the plaintiff's name was incidental to the book as a whole, and granted defendant's motion for summary judgment. 465 F.Supp. at 881–82.

In *University of Notre Dame v. Twentieth Century–Fox Film Corp.*, the court dismissed the claim of Notre Dame University's president, who was mentioned in three pages of a 143–page farcical book about college football. 256 N.Y.S.2d at 303–04. *See also DeGregorio*, 473 N.Y. S.2d at 924 (use was incidental where plaintiff appeared for five seconds of 10–minute broadcast, he did not speak and his name was not given; he and woman were filmed holding hands in broadcast on romance); *Meeropol v. Nizer*, 381 F.Supp. 29, 37–38 (S.D.N.Y.1974) (child of Rosenbergs was mentioned 29 times in book on their trial and execution; court held that "Twenty-nine isolated references of a fleeting and peripheral nature are insufficient to support a claim under § 51."), *aff'd on other grounds*, 560 F.2d 1061 (2d Cir.1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978); *Man v. Warner Bros. Inc.*, 317 F.Supp. 50, 53 (S.D.N.Y.1970) ("the incidental use of plaintiff's forty-five second performance in defendants' motion picture of this public event [the Woodstock Festival] is surely *de minimus* [sic]."); *Damron*, 231 N.Y.S. at 445–46 (single appearance of plaintiff's name in 398–page book "is clearly not a use prohibited by the statute.").

■ Plaintiff argues that the incidental use doctrine applies only to injunctive relief, an extraordinary remedy requiring a strong equitable showing, and that it should not be applied where, as here, she seeks only money damages. However, courts have invoked the doctrine in dismissing actions for money damages as well as for injunctions. *See Ladany*, 465 F.Supp. at 871; *Meeropol*, 381 F.Supp. at 31. Where the use is incidental, the courts have stated not merely that particular relief is unavailable, but that it is not actionable at all. *See id.* at 38 (references were "insufficient to support a claim under section 51"); *Notre Dame*, 256 N.Y.S.2d at 304 (because use was incidental it was type "which the Civil Rights Law does not find offensive"); *Damron,* 231 N.Y.S. at 446 (single use of plaintiff's name "is clearly not a use prohibited by the statute.").

While enjoining the publication of a book or the exhibition of a movie may raise freedom of speech issues, thus giving plain-

tiff's argument a surface appeal, imposing monetary liability on expression may also present such concerns. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (constitution sets limits on defamation actions).

The doctrine of incidental use was developed to address concerns that penalizing every unauthorized use, no matter how insignificant or fleeting, of a person's name or likeness would impose undue burdens on expressive activity, and carry consequences which were not intended by those who enacted the statute. *See Damron,* 231 N.Y.S. at 446. *See also Ladany,* 465 F.Supp. at 882. The statute was passed to change New York law, which then provided no remedy to those whose pictures or names were used blatantly and commercially, as in advertisements. *Stephano v. News Group Pubs., Inc.,* 64 N.Y.2d 174, 485 N.Y.S.2d 220, 223, 474 N.E.2d 580, 583 (1984). That is not this case.

Accordingly, defendants are entitled to dismissal of plaintiff's claim under section 51 of New York's Civil Rights Law.

## III. Conversion

Plaintiff alleges that "defendants have converted to their own use, benefit and profit the plaintiff's picture and image." (Complaint ¶ 12(b)).

In New York, the right of privacy "which generally provides remedies for any commercialization of the individual's personality without his consent," is limited to the rights prescribed in the Civil Rights Law. *Stephano,* 485 N.Y.S.2d at 224, 474 N.E.2d at 584. *See also Pirone v. MacMillan, Inc.,* 894 F.2d 579, 585 (2d Cir.1990); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 490 N.Y.S.2d 735, 739, 480 N.E.2d 349, 353 (1985) ("We have in the past recognized that, in this State, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51.").

■ Although plaintiff's claim is called one for conversion, it is in law a privacy claim, since it is based on the commercial use of plaintiff's image without her con-

sent. It does not exist, other than under the Civil Rights Law.

■ Moreover, any intangible property right that plaintiff has in her image is incapable of being "converted" under New York law. *See Ippolito v. Lennon,* 150 A.D.2d 300, 542 N.Y.S.2d 3, 6 (1st Dep't 1989) (plaintiff has no property right in his concert performance that can be converted by showing film of that performance).

## IV. Intentional Infliction of Emotional Distress

■ Although the complaint is unclear, defendants characterize plaintiff's allegations that their actions caused her "great mental anguish" and "severe emotional pain" (Complaint ¶¶ 14(b), 15(b)) as a claim of intentional infliction of emotional distress. Plaintiff does not dispute that characterization.

"A cause of action for intentional infliction of emotional distress must allege 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Doe v. American Broadcasting Cos.,* 152 A.D.2d 482, 543 N.Y.S.2d 455, 455 (1st Dep't) (citing *Freihofer*), *app. dismissed,* 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (Ct.App. 1989). Such a claim lies only where there has been severe mental pain inflicted through deliberate and malicious harassment or intimidation. *Ibid.*

■ Merely publicizing private, personal facts does not amount to such a claim. *See Freihofer,* 490 N.Y.S.2d at 741, 480 N.E.2d at 355 (details about divorce); *Doe,* 543 N.Y.S.2d at 456 (rape victims were recognized in defendants' program on rape although defendants assured them that they would be unrecognizable) (Rosenberger, J., dissenting from grant of summary judgment).

"If defendant's primary purpose was to advance its own business interests, and any conduct that harmed plaintiff was incidental, defendant has not committed the New York tort of intentional infliction of emotional distress." *Rooney v. Witco Corp.,*

722 F.Supp. 1040, 1045 (S.D.N.Y.1989) (citing cases).

Accordingly, defendants' motion for summary judgment dismissing this claim is granted.

## CONCLUSION

Defendants' motion for summary judgment is granted. The clerk of the court is directed to dismiss the complaint.