**Kimberly FONTAINE, Plaintiff,**

v.

**Kimberly RYAN, Stephen Sprouse, Stephen Sprouse Studios, Inc., Pinkerton's, Inc., Blanka Bernic, Jed Richardson and Keeble Cavaco & Duka, Inc., Defendants.**

**No. 88 Civ. 1842 (VLB).**

United States District Court, S.D. New York.

Dec. 13, 1993.

---

Stuart R. Shaw, New York City, for plaintiff.

Ralph F. DiSomma, Kelly & McGlynn, New York City, for defendants CSI, Stephen Sprouse and Stephen Sprouse Studios.

Timothy Gillane, Gallahan, Schepp, New York City, for defendant Pinkerton's.

Bernadette Harrigan, Morris, Graham, Westbury, NY, for defendant Blanka Bernic.

Jed Richardson, pro se.

Silfen & Glasser, New York City, for defendant Ryan.

Kerrigan & MacCartney, Nyack, NY, for defendant Keeble Inc.

VINCENT L. BRODERICK, District Judge.

## MEMORANDUM ORDER

### I

This case, in which jurisdiction is based on diversity of citizenship, involves an altercation at a party in the course of which the defendant Kimberly Ryan ("Ryan") injured the plaintiff. In addition to Ryan, plaintiff sued the sponsor of the party, Pinkerton's, Inc. ("Pinkerton's") which had been retained to provide security at the affair, and other defendants.

By Report and Recommendation dated September 2, 1993 United States Magistrate Judge Leonard Bernikow recommended that motions for summary judgment under Fed. R.Civ.P. 56 be granted for plaintiff against defendant Ryan and that such motions be granted in favor of defendants with respect to the other claims. I approve and adopt the Report and Recommendation of the Magistrate Judge, which is attached to and made a part of this memorandum order.[1] The com-

---

1. The Report and Recommendation was corrected on September 22, 1993 to make clear that it recommends dismissing all claims other than those against Ryan.

prehensive factual and legal analysis of the Magistrate Judge will not be repeated here; familiarity with it is assumed.

Plaintiff's objections are entirely devoid of merit. There is no evidence suggesting that the sponsor of the party, Pinkerton's, or anyone other than defendant Ryan caused, or could reasonably have been expected to prevent, plaintiff's injuries resulting from Ryan's attack.

## II

In granting summary judgment for defendants other than Ryan, the Magistrate Judge did not determine the scope of the duty of Pinkerton's toward the party sponsor in the absence of any detailed or written agreement between them. The legitimate interests of the parties—an important guide to contract interpretation where no document or explicit oral agreement concerning the matter exists—would suggest that security guards were paid by the sponsor of the party to protect that sponsor, and absent advance assurances of protection of invitees, owed no duty to the invitees.

Protection of the sponsor would logically include prevention, if possible, of the kind of incident giving rise to this lawsuit. Such an objective of the sponsor's agreement with Pinkerton's does not, however, suggest that a purpose of the agreement was to create a duty enforceable by invitees. There would have been no reason for the sponsor and Pinkerton's to agree to be liable to an invitee if an injury occurred at the affair notwithstanding whatever steps Pinkerton's might have been able to take to avoid such an incident, except if availability of guard protection was announced in order to encourage attendance (an event not suggested to have occurred here).

■ Absent explicit or inferable agreement to undertake responsibility to third parties (not merely to protect them for the benefit of the directly contracting parties), a

third party beneficiary agreement enforceable by the third party does not exist. See *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y.S.2d 948, 950 (2d Dept.1983), *aff'd* 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985); Note, 57 Colum.L.Rev. 406 (1957); Special Comm. on Consumer Aff., "Remedies Short of Consent or Litigated Orders for Violation of the Federal Trade Commission Act," 32 Rec. Ass'n Bar City NY 622 (1977).

■ If a contract is silent with respect to such a potentially far-reaching obligation not implicit in the parties' arrangement, and there is no basis for inferring a duty, the duty may properly be held to be absent based on the language of the contract. Otherwise the result would be one of "trapping parties in surprise contractual obligations that they never intended." *TIAA v. Tribune Co.*, 670 F.Supp. 491, 497 (S.D.N.Y.1987) (Leval, J.). This would have ill effects on the predictability of transactions, whereas "stability and predictability in contractual affairs is a highly desirable jurisprudential value." *Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 336, 514 N.Y.S.2d 209, 213, 506 N.E.2d 919, 922 (1987).

If agencies such as Pinkerton's were liable for damages should injuries occur at an affair through no fault of theirs and despite efforts to provide security, the cost of such guard service would increase, and the ranks of those able to obtain such service would obviously be lessened with no gain to the contracting parties or the public interest.[2]

## III

Pinkerton's has filed its own objections complaining that the Magistrate Judge's Report and Recommendation failed to limit Pinkerton's duty to the sponsor with whom they contracted. As a prevailing party securing summary judgment in its favor, Pinkerton's appears to lack standing to pursue such objections, which need not in any event be reached. See *In re DES Litigation*, 7

---

**2.** The paradox that imposing liability to invitees upon security guard organizations without any warrant in contract or statute law would reduce rather than enhance the likelihood that such safety precautions could be taken is one of a generic type known as "fallacies of composi-

tion." The classic example of the fallacy arises where each passenger on a lifeboat seeks to add one more piece of luggage. See P. Samuelson, *Economics: An Introductory Analysis* 11–12 (6th ed. 1964).

F.3d 20 (2d Cir.1993); see also *California v. Rooney,* 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987); *Black v. Cutter Laboratories,* 351 U.S. 292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956).

SO ORDERED.

## REPORT AND RECOMMENDATION

### (Sept. 2, 1993)

### (As Corrected Sept. 22, 1993)

To the Honorable VINCENT L. BRODERICK, United States District Judge:

BERNIKOW, United States Magistrate Judge.

This diversity action is based on an assault plaintiff sustained at the hands of defendant Kimberly Ryan at a party given by defendant CSI, Inc. Now before the court are the summary judgment motions of various defendants. Plaintiff has cross-moved for summary judgment against defendant Ryan and Pinkerton's Inc., and opposes the motions of the other defendants.[1]

*Background*

On September 17, 1987, defendants Stephen Sprouse, a New York fashion designer, and Stephen Sprouse Studios, Inc., (collectively CSI Associates, hereinafter "CSI") gave a party to celebrate the opening of Sprouse's new store. CSI hired defendant Keeble Cavaco Duka, ("Keeble"), a public relations, advertising and special events firm, to "produce" the party, at about which 1,000 guests were expected. Among other things, Keeble hired the caterer and, to provide security, defendant Pinkerton's, Inc. ("Pinkerton's").

Pinkerton's supplied five guards, all of whom were stationed inside the store where the party was held. The guards were dressed in what Pinkerton's terms its "soft look" uniform, consisting of a navy blue blazer, grey slacks and a blue and gray striped tie. Two guards were stationed in the foyer just inside the front door, one was located on the first level, one on the second level and one on the third. Keeble also hired four "bouncers" unaffiliated with Pinkerton's to maintain crowd control outside. Four Keeble employees were located at the front door to admit guests and seven other Keeble staffers were deployed throughout the store. Keeble rented six "walkie-talkies" so that its employees stationed in various parts of the store could communicate with each other. Keeble's Vice–President and the person responsible for planning the party, Julie Mannion, testified at deposition that no Pinkerton guard was issued a walkie-talkie. Mannion 67–68.[2]

The party began at 9:00 p.m. Champagne, milk, Perrier, Coca–Cola, and food were passed around on trays by waiters and waitresses. Two bars, one on the main level and one on the second floor, operated until 10:45 p.m. The last guest left between 11:30 and 11:45 p.m.

Plaintiff believes that she arrived at the party at about 11:00 p.m. She had not received an invitation; instead, she accompanied Rachel London, a clothing designer who had been invited and whose fashions she was modeling at Ms. London's request. Earlier that day, plaintiff and an ex-boyfriend, defendant Jed Richardson, had worked on a song that the two were recording together. Although their relationship was purely business by September of 1987, plaintiff and Richardson had been personally involved for a time during the late winter and early spring of that year. Guenther 104, 109. Some time after the two finished work on September 17, plaintiff went to Ms. London's apartment and then she and Ms. London left for the party.

When they arrived, plaintiff said, the party was "really crowded." Guenther 128. She got some champagne and started chatting with people that she knew. At about 11:30, she noticed Jed Richardson walking by and called out his name. When he didn't respond, plaintiff "ran over to him" so that she could introduce him to the man that she had been talking with, Ed Steinberg, a video producer. Guenther 134. Plaintiff said that

---

1. The motions were referred to me for report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

2. Deposition transcript pages are referenced by the deponent's name followed by the page number.

Richardson continued to walk towards the front of the store "like he didn't know" her, as if "[h]e was trying to run away or something." Guenther 135.

Plaintiff approached Richardson and said "hi" and kissed him on the cheek.[3] At that point, defendant Ryan, with whom Jed had had a sporadic romantic relationship, appeared from behind Richardson and greeted plaintiff with "Hello, bitch." Guenther 138. Ryan tossed her champagne in plaintiff's face and then struck her above the eye with the glass, cutting plaintiff with the broken glass from just above her eyebrow down to her mouth. According to witnesses, the entire encounter, from the time that plaintiff heard Ryan's epithet until the glass hit her, lasted between one and five seconds.[4] *See, e.g.,* Guenther 141 (one to two seconds), Ryan 112, (three to five seconds), Richardson 49, 88 (two to five seconds), Steinberg 44 (three to four seconds).

Plaintiff wiped the blood off her face and noticed that a crowd, including photographers, had gathered. She did not see any uniformed security guards. Guenther 149. Within a minute, Rachel London rushed plaintiff out of the store, Guenther 147, and tried to get a cab to take plaintiff to the hospital. As she was leaving, plaintiff testified, she saw a man in a "bluish gray suit . . . going like hush, hush, hush to everybody." Guenther 148. She never learned this man's identity, yet she "got the feeling . . . that he was in charge or something." Guenther 159. Another man, she said, ran over to her after the incident, but she didn't know if he was a security guard and he didn't introduce himself as one. Guenther 296.

Jed Richardson testified that he thought that a black man in a turtleneck assisted plaintiff after Ryan struck her. Richardson 62. Ryan also said that she saw men in turtlenecks after the assault, but that she didn't notice any Pinkerton's guards. Ryan 61–62, 111, 131. Steinberg remembered

"people taking care of [plaintiff]" and that "things were under control." Steinberg 31.

Plaintiff alleges, as her first two claims, assault and negligence by Ryan. She also alleges, as her eleventh claim, that Ryan menaced her in a nightclub on March 9, 1988. Her third and fourth claims, against Stephen Sprouse and Stephen Sprouse Studios, Inc., allege that these defendants negligently failed to protect plaintiff and negligently and indiscriminately dispensed alcoholic beverages to guests. Plaintiff's fifth and sixth claims are for intentional infliction of emotional distress against Sprouse and Sprouse Studios. She alleges that in November, 1987, Sprouse held a fashion show in which models were made up to appear as if they had blood dripping down their faces and scars similar to the way plaintiff appeared after she had been assaulted. As a seventh claim, plaintiff alleges negligence against Sprouse's landlord, Blanka Bernic, who owns the building where the party was held. Her eighth claim alleges negligence on the part of Pinkerton's for failing to supervise the conduct of the guests and failing to aid plaintiff after the assault. Plaintiff also sues Jed Richardson, as her ninth and tenth claim, for conspiring with Ryan and encouraging her assault on plaintiff, and for failing to warn plaintiff of the impending attack. Finally, her twelfth claim alleges that Keeble Cavaco Duka was negligent in selecting Pinkerton's and in supervising the Pinkerton's guards assigned to the party.

Defendants Blanka Bernic, CSI, Keeble and Pinkerton's now move for summary judgment. Plaintiff cross moves for summary judgment against Ryan and Pinkerton's, and opposes CSI's, Blanka Bernic's and Keeble's motions.

*Discussion*

The standards governing motions for summary judgment under Fed.R.Civ.P. 56 are well known. The court is not to resolve issues of fact, but to determine whether

---

**3.** Richardson testified that plaintiff "started like jumping—like, you know, obnoxiously threw herself on me and started kissing me. And I was like, you know, I said get the hell off me and she came up and followed me and like she gave me a kiss." Richardson 45.

**4.** For her attack on plaintiff, Kimberly Ryan pled guilty to assault in the second degree, New York Penal Law § 120.05(2) (McKinney 1992), in New York Supreme Court on March 24, 1988.

there are issues to be tried. *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). "The key is issue finding, not issue resolution." *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982). Only disputes material to the claim before the court need be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law governing the litigation indicates which facts are material; factual questions not affecting the outcome of the suit will not forestall summary judgment. *Phibro Energy Inc. v. Empresa De Polimeros De Sines Sarl*, 720 F.Supp. 312, 315 (S.D.N.Y. 1989). When no reasonable trier of fact could find for the opposing party, judgment is appropriate. *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992).

Initially, the movant must demonstrate the absence of a material factual dispute. *Schering Corporation v. Home Insurance Company*, 712 F.2d 4, 9 (2d Cir.1983). All ambiguities are resolved and all inferences drawn against the movant in considering its motion. *Patrick v. Le Fevre*, 745 F.2d 153, 158 (2d Cir.1984). Where the non-movant bears the ultimate burden of proof, the moving party meets its initial burden by alerting the court to the absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmoving party to show that a trial issue exists. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). Conclusory allegations or denials, or "mere speculation or conjecture" are insufficient to meet this burden. *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 12 (2d Cir.1986). Rather, the non-movant must submit specific facts establishing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.*, 844 F.2d 955, 959 (2d Cir.1988), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988); *see Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,

769 F.2d 919, 923 (2d Cir.1985). Even then, if "'it clearly appears that the issues are not genuine, but feigned,'" *United National Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir.1993) (quoting *Glick & Dolleck, Inc. v. Tri–Pac Export Corp.*, 22 N.Y.2d 439, 293 N.Y.S.2d 93, 94, 239 N.E.2d 725, 726 (1968)), or if plaintiff fails to present affirmative evidence of all of the elements of the alleged tort, summary judgment is warranted. *See International Minerals and Resources, Inc. v. Pappas*, No. 87 Civ. 3988 (PKL), 1992 WL 354504 *2 (S.D.N.Y. November 19, 1992).

### I. Plaintiff's Motion Against Ryan

Plaintiff moves for summary judgment with respect to liability against defendant Ryan on her first claim, which alleges that Ryan assaulted her.[5] At oral argument, Ryan's counsel conceded that Ryan's guilty plea to a charge of criminal assault is res judicata with respect to this civil claim. Thus, on her first claim, plaintiff should be awarded summary judgment as to liability. Plaintiff's damages have yet to be determined.

### II. Pinkerton's Motion

#### a. Failure to Prevent the Assault

Pinkerton's moves for summary judgment because it believes that it was hired to safeguard Sprouse's store and merchandise on display, not individual guests. It further points out that plaintiff's injury resulted from an unforeseeable attack that it could not have prevented. Plaintiff, on the other hand, contends that Pinkerton's function included protecting party guests. More than that, she argues, her injury was foreseeable "given the type of party, the number of celebrities, the number of guests crowded into a confined space, [and] the fact that alcoholic beverages were served indiscriminately." Plaintiff's Memorandum in Opposition at 15.

▪ As a general matter, to prove negligence, a plaintiff must demonstrate (1) the existence of a legal duty owed plaintiff by defendants, and (2) a breach of that duty (3) proximately causing injury to plaintiff. *Kazanoff v. United States*, 945 F.2d 32, 35 (2d

---

**5.** It does not appear that plaintiff seeks summary judgment on her other claims against Ryan.

Cir.1991); *Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531, 535 (1981).[6]

■ Plaintiff's first hurdle is to establish that Pinkerton's had a duty to protect her. *Pulka v. Edelman*, 40 N.Y.2d 781, 390 N.Y.S.2d 393, 394, 358 N.E.2d 1019, 1020 (1976) (citing *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 101 (1928)). Duty "tells us whether the risk to which one person exposes another is within the protection of the law," an inquiry guided by policy as well as logic. *See De Angelis v. Lutheran Medical Center*, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 627, 449 N.E.2d 406, 407 (1983). The absence of a duty makes it impossible for plaintiff to show a breach; without a breach, there can be no liability. *Pulka*, 390 N.Y.S.2d at 395, 358 N.E.2d at 1020. The court ordinarily decides whether a duty exists. *Eiseman v. State*, 70 N.Y.2d 175, 518 N.Y.S.2d 608, 613, 511 N.E.2d 1128, 1134 (1987); *De Angelis*, 462 N.Y.S.2d at 628, 449 N.E.2d 408.

■ Plaintiff says Pinkerton's duty to protect her stems from Pinkerton's agreement with Keeble to provide security at the party. As a guest, she claims, she was a third-party beneficiary of the Keeble–Pinkerton's security agreement. The New York law relating to the rights of third-party beneficiaries is summed up in *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y.S.2d 948, 950 (2d Dep't 1983), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985) (quoting *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 185 (1980)) (internal citations omitted):

> A third party beneficiary may sue on a contract made for his benefit. The intent to benefit a third party must be shown and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost. Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract. An incidental beneficiary is a third party who may derive benefit from the performance of a contract

though he is neither the promisee nor the one to whom performance is to be rendered. While it is not necessary that a third-party beneficiary be identified or even identifiable at the time that the contract is made, he has no right to enforce the contract himself until such time as he is identified. A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right.

Thus, plaintiff may recover as a third party beneficiary only if it appears from the contract that the parties intended to protect her from physical injury. *See Bernal v. Pinkerton's, Inc.*, 52 A.D.2d 760, 382 N.Y.S.2d 769, 770 (1st Dep't 1976), *aff'd*, 41 N.Y.2d 938, 394 N.Y.S.2d 638, 363 N.E.2d 362 (1977); *see also Bizien v. Port Authority of New York & New Jersey*, 577 F.Supp. 1093, 1102 (E.D.N.Y.1983); *Cerullo v. Aetna Casualty & Surety Co.*, 41 A.D.2d 1, 341 N.Y.S.2d 767, 770 (4th Dep't 1973). Further, plaintiff bears the burden of showing that the contracting parties intended to confer upon her a third party benefit. *Strauss*, 469 N.Y.S.2d at 950; *see Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F.Supp. 501, 504 n. 6 (S.D.N.Y. 1992).

■ As Pinkerton's points out, plaintiff submits nothing which " 'evince[s] a discernible intention to allow recovery for the specific damages to the third party that resulted from a breach' " of the security contract. *See Castorino v. Unifast Building Products Corp.*, 161 A.D.2d 421, 555 N.Y.S.2d 350, 352 (1st Dep't 1990) (quoting *Strauss v. Belle Realty Co.*, 469 N.Y.S.2d at 950)); *Buckley v. I.B.I. Security Service, Inc.*, 157 A.D.2d 645, 549 N.Y.S.2d 744, 744 (1st Dep't 1990); *Haigler v. New York*, 135 A.D.2d 362, 521 N.Y.S.2d 428, 429 (1st Dep't 1987). Apparently, the Keeble–Pinkerton's security agreement was oral; no written contract has been submitted. Pinkerton's supplies two documents, an invoice and an internal "journal entry," to show that it was not intended to assume responsibility for the guests' well-being. The invoice bills CSI for "Property Protection." Pinkerton's Exh. B. The journal entry also describes Pinkerton's function

---

**6.** The parties agree that New York law governs this action.

as "property protection." *Id.* Under "Specific Duties," the journal entry says that "The S/O's by their uniformed presence shall serve to deter any aberrant or mischievous acts i.e. fire theft etc." Pinkerton's says these records establish that they were hired to safeguard Sprouse's designs and his store, not to protect guests from criminal assault.

But the journal entry reference to the deterrence of "fire, theft *etc.*" (emphasis supplied), suggests that Pinkerton's duties may not have been confined to guarding against just the listed hazards. Also, Julie Mannion testified that she did not know if property protection was "specifically the only purpose" for which Keeble obtained security. Mannion 78. She recalled that the Pinkerton's guards were told "basically to oversee the premises and make sure nothing happened," *id.* at 64, and "to observe, to make sure that nothing was stolen. There were no problems, nobody needed their assistance." Mannion 74.

■■■ The open-ended journal language, and Mannion's testimony, suggests that the parties had no precise understanding as to Pinkerton's role at the affair. Summary judgment based on construction of a contract should be limited to unambiguous agreements. *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir.1989). The court may not interpret an ambiguous contract "to accord with its instinct for the dispensation of equity upon the facts of a given case." *Cruden v. Bank of New York,* 957 F.2d 961, 976 (2d Cir.1992). Mannion's testimony that the Pinkerton's guards were intended to maintain order and ensure that "nobody" needed assistance raises a question as to whether the guards were intended to protect guests. Given the deference to which plaintiff is entitled as non-movant, *see Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991), she manages to identify a factual dispute with respect to the scope of Pinkerton's contractual duty.

■■■ Even assuming that Pinkerton's was obligated to safeguard plaintiff, she is unable to establish that Pinkerton's breach proximately caused her injury. *See Daversa v. Harris,* 167 A.D.2d 810, 563 N.Y.S.2d 372, 373 (3rd Dep't 1990). Proximate cause is

that " 'which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred.' " *Caraballo v. United States,* 830 F.2d 19, 22 (2d Cir.1987) (quoting *Rider v. Syracuse Rapid Transit Ry. Co.,* 171 N.Y. 139, 147, 63 N.E. 836 (1902)). Causation is ordinarily resolved by the fact finder, but where the actual cause of injury is undisputed, causation becomes a question for the court. *See Caraballo,* 830 F.2d at 22; *Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 612, 407 N.E.2d 451, 456 (1980); *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 434 N.Y.S.2d 166, 170, 414 N.E.2d 666, 670 (1980); *Rivera v. New York,* 11 N.Y.2d 856, 227 N.Y.S.2d 676, 677, 182 N.E.2d 284, 285 (1962), *rearg. denied,* 11 N.Y.2d 1016, 229 N.Y.S.2d 1028, 183 N.E.2d 772 (1962).

■■■ The immediate cause of plaintiff's injury was Ryan's attack. *See* Plaintiff's 3(g) Statement ¶¶ 1, 12; *Silver v. Sheraton–Smithtown Inn,* 121 A.D.2d 711, 504 N.Y.S.2d 56, 58 (2d Dep't 1986); *see also Ventricelli v. Kinney System Rent A Car, Inc.,* 45 N.Y.2d 950, 411 N.Y.S.2d 555, 556, 383 N.E.2d 1149, 1150 (1978). If the assault was foreseeable, Pinkerton's may be liable if it did not take adequate security precautions. *See Nallan,* 429 N.Y.S.2d at 614, 407 N.E.2d at 458. On the other hand, Pinkerton's cannot be held liable for failing to prevent an unforeseen and unanticipated criminal act. *See Cullen v. BMW of North America,* 691 F.2d 1097, 1101 (2d Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *Silver v. Sheraton–Smithtown,* 504 N.Y.S.2d at 57; *Ward v. State,* 81 Misc.2d 583, 366 N.Y.S.2d 800, 807 (Ct.Cl.1975).

In *Kohler v. Wray,* 114 Misc.2d 856, 452 N.Y.S.2d 831, 834–35 (Sup.Ct.1982), the plaintiff, a guest at a party, unwittingly asked a married guest to dance and was subsequently beaten up by her husband. *Id.* at 833. The assault occurred so quickly that the defendant, the party's host, had no time to intervene. *Id.* at 834. The court granted the defendant summary judgment because there was no evidence that he had notice of the assault or an opportunity to prevent it.

452 N.Y.S.2d at 834. Similarly, in *Axon v. New York City Transit Authority*, 120 A.D.2d 475, 502 N.Y.S.2d 31, 32 (2d Dep't 1986), a police officer separated two quarrelling passengers on a subway train and took them to a platform to sort out their dispute. As the three stood on the platform, one combatant hit the other in the mouth without warning. *Id.* The injured passenger sued the Transit Authority. The court reversed the jury verdict in favor of the victim and dismissed the complaint, finding that "where [the attacker] had neither threatened nor engaged in prior acts of violence against the plaintiff," the defendant could not have reasonably anticipated nor thwarted the sudden attack. 502 N.Y.S.2d at 32.

Plaintiff testified that she was not aware of any other altercations or disturbances at the party. Guenther 149. She said that she did not know Sprouse, Guenther 118, and Sprouse denies knowing plaintiff or Ryan. Sprouse 34; Sprouse Aff. ¶ 5. Steinberg testified that the party was a "very adult affair," and a "pretty relatively ordinary party," Steinberg 28, and he believed that it was "conducted in an orderly manner." Steinberg 45. What is more, nothing suggests that Pinkerton's, or indeed, any of the defendants, knew of the animosity between plaintiff and Ryan. It appears that none of the defendants even knew who plaintiff or Ryan were. Finally, Ryan described the assault as impulsive and without warning to anyone. Ryan 102–03. This evidence supports Pinkerton's contention that it had no way of predicting or preventing Ryan's sudden, *see Axon*, 502 N.Y.S.2d at 32–33, and unanticipated, *see Silver v. Sheraton–Smithtown*, 504 N.Y.S.2d at 57, attack.

In response, plaintiff points out that Ryan testified that her roommate, "Dee Dee," reported to Ryan that the plaintiff had stepped on her foot and elbowed her in the stomach. Ryan 122–24. Plaintiff further notes that Ryan testified in connection with her criminal case that Dee Dee worked for Sprouse. *See* Plaintiff's letter dated March 30, 1993, Exh. 1 (transcript of Ryan's plea allocution). Plaintiff thus concludes that the parties had notice of trouble brewing. *See* Plaintiff's Affirmation in Opposition ¶ 12. For several reasons, this information falls short of establishing that Pinkerton's should have expected a criminal assault. First, Ryan's account of her conversation with her roommate is hearsay, and accordingly insufficient to raise a triable issue. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n. 19, 90 S.Ct. 1598, 1609 n. 19, 26 L.Ed.2d 142 (1970); *Burlington Coat Factory Warehouse*, 769 F.2d at 924. Dee Dee is obviously known to plaintiff, but she has not submitted an affidavit or deposition testimony from her. *See Gonyea v. Folger*, 133 A.D.2d 964, 520 N.Y.S.2d 670, 671 (3rd Dep't 1987) (although assaulted bar patron claimed that his attacker had threatened another patron, the victim failed to provide an affidavit from the alleged recipient of the threat). Second, plaintiff said that she was unaware of any other altercations, arguments or incidents at the party. Guenther 149.[7] In addition, plaintiff submits no evidence that Ryan's roommate worked for Sprouse, let alone alerted him or anyone else to hostility between the Ryan and plaintiff. Indeed, Ryan testified that she and her roommate decided not to warn security but to avoid plaintiff instead. Ryan 124. Thus, plaintiff has not rebutted Pinkerton's contention that it could not have foreseen Ryan's attack. *See Garofalo v. Henrietta Italia, Inc.*, 175 A.D.2d 580, 572 N.Y.S.2d 246, 246 (4th Dep't 1991). She therefore fails to establish that Pinkerton's negligence proximately caused her injury. *Pagan v. Hampton Houses, Inc.*, 187 A.D.2d 325, 589 N.Y.S.2d 471, 472 (1st Dep't 1992); *see Ward v. State*, 366 N.Y.S.2d at 807.

*Cruz v. Madison Detective Bureau, Inc.*, 137 A.D.2d 86, 528 N.Y.S.2d 372, 374 (1st Dep't 1988), cited by plaintiff, does not compel a different result. In that case, a movie theater usher sued Madison Detective Bureau, who had been hired to protect both patrons and employees. *Id.*, 528 N.Y.S.2d at 373. The usher had been assaulted by patrons attempting to sneak from one theater to another without paying. *Id.* The trial testimony indicated that the guards' respon-

---

7. Although plaintiff denied knowing any of Sprouse's employees and specifically Ryan's roommate, she admitted that the two had been introduced. Guenther 349.

sibility particularly included crime prevention when the movies had ended and the crowds were leaving the theaters. *Id.*, 528 N.Y.S.2d at 374. In contrast to the instant case, the plaintiff there submitted evidence to indicate that the defendants should have anticipated the possibility of criminal activity because it had occurred at the theater in the past. *Id.*, 528 N.Y.S.2d at 375.

### b. Failure to Assist

■ Plaintiff further alleges that Pinkerton's was negligent because it "failed to call the police, told defendant Kimberly Ryan to leave, failed to call an ambulance or Emergency Medical Service, and let plaintiff seek medical attention for herself, without any assistance." Complaint ¶ 48.[8]

Plaintiff's own deposition testimony undermines her claims. For one thing, she said that within a minute of the assault her escort rushed her out of the party. Guenther 146–47. She also admitted that she never requested the assistance of security. Guenther 298. In addition, at deposition, plaintiff could not explain the basis for her claim that a Pinkerton's employee ushered Ryan out of the party. Guenther 239. She testified that she thought that the claim referred to "the man in the little gray suit," Guenther 239, "who she described as going 'ssh, ssh, ssh.' " Guenther 296. Richardson testified that no Pinkerton's guard told Ryan to leave. Richardson 50–51. Hence, nothing supports plaintiff's contention that Pinkerton's "admittedly" permitted Ryan to leave.[9] Plaintiff's Memorandum in Opposition at 12.

■ More important, however, plaintiff has not shown that Pinkerton's alleged failure to come to her assistance proximately caused or aggravated her injuries. Failure to act "is not regarded as the cause of an injury if the injury would have occurred without it." *See Trueba v. Flota Bananera Ecuadorian Lines, Inc.*, 675 F.Supp. 786, 789 (S.D.N.Y.1987). Ryan injured plaintiff; she

has not shown that Pinkerton's alleged neglect exacerbated that injury.

In sum, plaintiff submits no evidence to suggest that Pinkerton's should have anticipated Ryan's attack, or that its alleged negligence contributed to her injury. Accordingly, Pinkerton's motion for summary judgment should be granted and plaintiff's cross motion denied.

### III. Keeble

■ As noted, plaintiff contends that Keeble, the party "producer," was negligent in selecting Pinkerton's and in supervising the Pinkerton's guards assigned to the party. As she had in connection with Pinkerton's motion, plaintiff claims that she was a third party beneficiary of the security contract between Keeble and Pinkerton's. To support her contention that the assault should have been expected, plaintiff continues to rely on Ryan's hearsay testimony regarding the confrontation between plaintiff and Ryan's roommate.

Keeble's motion for summary judgment should be granted. Again, plaintiff fails to adduce sufficient facts to show that Ryan's attack should have been anticipated. First, as stated, Ryan's testimony as to the exchange between her roommate and the plaintiff is hearsay and thus insufficient to raise a triable issue. *See Adickes*, 398 U.S. at 159 n. 19, 90 S.Ct. at 1609 n. 19; *Burlington Coat Factory Warehouse*, 769 F.2d at 924; *Gonyea*, 520 N.Y.S.2d at 671–72. And although plaintiff claims that CSI, Keeble and Pinkerton's had notice of hostilities between guests, Plaintiff's Memorandum in Opposition at 7, Ryan testified that neither she nor her roommate notified anyone of plaintiff's confrontation with Ryan's roommate. Plaintiff admitted that she had not been acquainted with any Keeble employees on the night of the party. Guenther 349. Nor has she produced admissible evidence of similar incidents: she

---

**8.** Plaintiff also asserts that Pinkerton's failed to follow its own emergency protocols. Plaintiff's Memorandum in Opposition at 11. This conclusory statement finds no support in the record. Plaintiff fails to supply evidence that Pinkerton's had issued "directives" for emergency situations, fails to show how Pinkerton's ignored its own

regulations, and does not indicate how this misconduct exacerbated plaintiff's injury.

**9.** How plaintiff was injured by Pinkerton's alleged failure to detain Ryan is unexplained. In any event, Ryan was subsequently indicted and pled guilty to assault.

testified that she was unaware of any other disturbances, fights, arguments or commotions. Guenther 149. Plaintiff's claim that Ryan's assault was foreseeable again fails. *See Davis v. New York*, 183 A.D.2d 683, 584 N.Y.S.2d 64, 64–65 (1st Dep't 1992); *Lindskog v. Southland Restaurant, Inc.*, 160 A.D.2d 842, 554 N.Y.S.2d 276, 277 (2d Dep't 1990). In the absence of any evidence that the criminal attack should have been anticipated, *see Kohler*, 452 N.Y.S.2d at 834–45; *Ward v. State*, 366 N.Y.S.2d at 807 (Ct.Cl. 1975), Keeble's motion should be granted.

## IV. Blanka Bernic

■ Plaintiff has also sued Sprouse's landlord, Blanka Bernic, who owns the building where Sprouse's store is located and where the party was held, "for negligently renting to an unsuitable tenant." Plaintiff's Memorandum in Opposition at 17. She alleges that "this out-of-possession landlord retained a substantial measure of control over the premises through its right to re-enter, inspect, make repairs and the like," *id.* at 16, and further asserts that Bernic was aware, when it leased the store to CSI, that "a large opening party (or parties) would be held." *Id.* at 17.

No material factual disputes exist with respect to this claim. Bernic testified at deposition that she was unaware that CSI would be giving a party.[10] Bernic 8–9. Her attorney admitted that she had "little or no connection" with the property. Bernic 16. Bernic knew nothing of the events of November 17, 1987. Bernic 13. Although plaintiff asserts that Bernic's negligence is "all the more glaring since the building has only one means of egress/ingress and had not sprinkler system," Plaintiff's Memorandum in Opposition at 17, she has not claimed that the alleged lack of a second exit or sprinkler system contributed to her injury. Moreover,

Bernic said that she was unaware of any building code violations existent on the date of the party, Bernic 13, and apparently has not been accused of any violations in connection with the events at the party.[11]

■ The only issue is whether Bernic, as an out of possession landlord, owed plaintiff a duty of care to protect her from the criminal conduct of others. A landowner is obligated to exercise reasonable care in maintaining her property. *Kush v. Buffalo*, 59 N.Y.2d 26, 462 N.E.2d 831, 833, 449 N.E.2d 725, 727 (1983); *see Kazanoff*, 945 F.2d at 38. Possessors of land are not insurers of a visitor's safety but they may be responsible for protecting tenants against third party criminal acts. *See Nallan*, 429 N.Y.S.2d at 613, 407 N.E.2d at 457; *Clarke v. J.R.D. Management Corp.*, 118 Misc.2d 547, 461 N.Y.S.2d 168, 169 (Civ.Ct.1983). Such a duty attaches only if the risk of criminal conduct on the premises is foreseeable. *Maysonet v. KFC, Nat. Management Co.*, 906 F.2d 929, 930–31 (2d Cir.1990); *Camacho v. Edelman*, 176 A.D.2d 453, 574 N.Y.S.2d 356, 357 (1st Dep't 1991). Even a history of criminal activity on the premises does not obligate the landlord to take protective measures unless she "knows or has reason to know from past experience 'that there is a likelihood of conduct on the part of third persons ... which is likely to endanger the safety of the visitor.'" *Nallan*, 429 N.Y.S.2d at 613, 407 N.E.2d at 457 (quoting Restatement, Torts 2d, § 344, Comment f).

Plaintiff submits nothing to suggest that Sprouse's store had a history of prior criminal activity. *See Maysonet*, 906 F.2d at 931; *cf. Brown v. Marathon Realty, Inc.*, 170 A.D.2d 426, 565 N.Y.S.2d 219, 221 (2d Dep't 1991) (it is "incumbent on plaintiffs, in opposition to the motion, to lay bare their proof as to [defendant's] actual or constructive notice of the alleged hazard"). Unlike *Nallan*, in

10. Plaintiff complains that Blanka Bernic was not a "proper witness" despite the fact that she is a named party because she "knew nothing about anything." Plaintiff's Cross–Motion ¶ 41. Nonetheless, she alleges that Bernic "*knew* that [Sprouse] would have a party ... likely to draw an unruly crowd." *Id.* at ¶ 40 (original emphasis). As Bernic points out, nothing impaired plaintiff's legal remedies if she felt that Bernic

could have supplied additional discovery or produced a more knowledgeable witness.

11. Plaintiff's charge that Bernic's building violated New York City's Administrative Code remains unsubstantiated. Nor does she identify which code provisions were allegedly violated. *See Manning v. New York Telephone Co.*, 157 A.D.2d 264, 555 N.Y.S.2d 720, 724 (1st Dep't 1990).

which the victim showed that 107 crimes occurred in the building in question in the 21 months prior to his assault, plaintiff fails to identify any circumstances that should have warned Bernic of the possibility of violence. 429 N.Y.S.2d at 613, 407 N.E.2d at 457. Plaintiff has not established a pattern of criminal activity sufficient to place Bernic on notice that additional safety precautions were necessary. *Camacho*, 574 N.Y.S.2d at 357; *Davis v. New York*, 584 N.Y.S.2d at 64.

Moreover, plaintiff fails to demonstrate, as she has failed with respect to the motions of the other defendants, that Ryan's conduct was foreseeable. *See id.* at 932. She alleges that Bernic "knew that [Sprouse] would have a large opening party, and that he was an avant-garde fashion designer, that an opening was likely to draw an unruly crowd." Plaintiff's Cross–Motion ¶ 40. The evidence contradicts these unsupported assertions. To begin with, Bernic flatly denied that she knew that Sprouse planned a party. Further, Ryan assaulted plaintiff impulsively and without warning. *See Maysonet*, 906 F.2d at 931. Also, no witness testified that the party was unruly; no evidence suggests that other fights marred the affair. Thus, Bernic cannot have been negligent for failing to take additional security precautions in the absence of some indication that criminal activity rendered such measures necessary. *See Kazanoff*, 945 F.2d at 39; *Iannelli v. Powers*, 114 A.D.2d 157, 498 N.Y.S.2d 377, 381 (2d Dep't 1986), *app. denied*, 68 N.Y.2d 604, 506 N.Y.S.2d 1027, 497 N.E.2d 707 (1986); *see also Amarante v. Rothschild*, 171 A.D.2d 633, 566 N.Y.S.2d 657, 658 (2d Dep't 1991).

Plaintiff's reliance on *Guzman v. Haven Plaza Housing Development Fund Co.*, 69 N.Y.2d 559, 516 N.Y.S.2d 451, 452–53, 509 N.E.2d 51, 52–54 (1987) is misplaced. True, the Court of Appeals found that an out of possession landlord who retained the right to re-enter for repair or inspection could be liable for the injuries caused by a defective staircase. But that plaintiff specifically asserted that her injury resulted from the hazardous condition of the stairs, which appeared to have violated the Administrative Code of the City of New York. *See id.* Plaintiff here establishes no connection between the alleged building defects and her injury. *See Rivera*, 227 N.Y.S.2d at 677, 182 N.E.2d at 285; *see also Trueba*, 675 F.Supp. at 789–90; *Herndon v. Jennings*, 101 A.D.2d 688, 475 N.Y.S.2d 678, 679 (4th Dep't 1984).

## V. CSI

### a. Negligence

■ Plaintiff argues that CSI had a duty to protect plaintiff from foreseeable harm. It failed to take adequate security precautions, according to plaintiff, despite its awareness of the "dangers inherent in a large crowd, particularly where alcohol is being served." Plaintiff's Memorandum in Opposition at 3. She also alleges that "in the context of a large party, [where] alcohol was being served and where defendant Kimberly Ryan had admittedly availed herself of same," *id.* at 6, Ryan's attack was not unexpected.

■ Specifically, plaintiff accuses CSI of failing to control the supply of alcohol and inadequately staffing the party. If she is to deter summary judgment, plaintiff must provide "some affirmative indication that [her] version of relevant events is not fanciful." *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980); *see also Campbell v. Lorenzo's Pizza Parlor, Inc.*, 172 A.D.2d 478, 567 N.Y.S.2d 832, 834 (2d Dep't 1991), *app. denied*, 78 N.Y.2d 863, 578 N.Y.S.2d 877, 586 N.E.2d 60 (1991). She proffers no evidence linking her injury with the careless distribution of alcohol. *See Gonyea*, 520 N.Y.S.2d at 671; *Ward v. State*, 366 N.Y.S.2d at 809. Ryan testified that she had "one, maybe one and a half" ordinary glasses of champagne prior to the assault.[12] Ryan 111. Steinberg recalled that the party was not "wild" but was conducted in an orderly manner. Steinberg 44–45. More important, plaintiff has not shown that Ryan

---

12. Ed Steinberg testified that he thought Ryan was "totally out of her mind-smashed," Steinberg 32. He was not, however, acquainted with Ryan. Steinberg 23. In addition, Steinberg does not say that he spoke to plaintiff: "I wasn't fascinated with either of these Kimberlys. The one I knew or the one I didn't know." *Id.* at 26. Nor does he describe the basis for his belief that Ryan may have been drunk.

was served at the party despite being obviously intoxicated. *See Garofalo,* 572 N.Y.S.2d at 247; *Campbell,* 567 N.Y.S.2d at 834. That Ryan subsequently assaulted plaintiff does not support an inference that Keeble's staff or agents served an intoxicated person. *See Gonyea,* 520 N.Y.S.2d at 672. Nor does having alcoholic beverages available at a party constitute notice of the potential for injury. *See Kohler,* 452 N.Y.S.2d at 834–35; *see also Herndon,* 475 N.Y.S.2d at 679.

■ CSI's alleged failure to hire competent guards should also be rejected. As discussed in connection with Pinkerton's motion, *supra,* plaintiff has not submitted evidence of Pinkerton's incompetence or of other violence at the party. Nor has plaintiff shown that Keeble's or Pinkerton's due diligence would have prevented the assault. Accordingly, CSI's negligence cannot be premised on inadequate staffing. Finally, plaintiff argues that a factual dispute exists regarding the duration of the attack. The deposition excerpts submitted by the parties consistently place the length of the attack at from two to five seconds and bars this claim. *See, e.g.,* Guenther 141 (one to two seconds), Ryan 112, (three to five seconds), Richardson 49, 88 (two to five seconds), Steinberg 44 (three to four seconds).

In sum, plaintiff submits no evidence that crowded conditions, availability of alcohol or dearth of proper security measures contributed to or facilitated the assault. For the reasons stated in connection with Pinkerton's and Keeble's motions for summary judgment, plaintiff fails to establish that CSI should have foreseen the possibility of a guest being assaulted by another guest.

### b. Intentional Infliction of Emotional Distress

In November, 1987, Sprouse held a fashion show featuring models wearing facial makeup to simulate blood. Plaintiff claims that the models appeared to have blood flowing down their cheeks from their forehead similar to the way she looked immediately after being cut by Ryan. She concedes that she never saw the fashion show; she testified that a friend "said that [Sprouse] had these models parading down the runway with blood dripping from their faces, like walking, like slashing themselves." Guenther 241. She attaches to her cross motion a photocopy of what she claims is a magazine photograph from "i.D." Magazine. Plaintiff's Exh. 4. It depicts a model whose left eye appears to drip a dark liquid running down her face. The caption identifies the clothing the model is wearing as "Sprouse label."

Sprouse admitted that he selected the makeup for his November 1987 show, but he claims that the fake blood dripped from the models' mouths. Sprouse 30. The makeup, he testified, was inspired by vampire movies released during the summer of 1987. Sprouse 71. He also claims that the fashion show "was conducted as a part of [his] business in November 1987," and had nothing to do with plaintiff, Sprouse Aff. ¶ 10, whom he says he didn't know until he met her at his deposition. Sprouse 34. He further denies involvement in preparing or photographing the model whose picture plaintiff attaches to her motion as Exh. 4. Sprouse Aff. ¶ 9.

■ Under New York law, claims of intentional infliction of emotional distress must meet the strict standard set forth in the Restatement (Second) of Torts § 46(1). *See Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985); *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983); *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1216–17 (1978). That section states: "One who by extreme and outrageous conduct intentionally ... causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46(1). To be actionable, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.,* comment d (quoted in *Fischer,* 402 N.Y.S.2d at 993, 373 N.E.2d at 1218). Moreover, the defendant's conduct must be "especially calculated to cause and does cause mental distress." *Mauala v. Milford Management Corp.,* 559 F.Supp. 1000, 1004 (S.D.N.Y.1983); *Kaplan v. Dart Tow-*

*ing, Inc.,* 159 A.D.2d 610, 552 N.Y.S.2d 665, 667 (2d Dep't 1990). "It is for the court to determine, as a question of law, whether the alleged misconduct . . . may be reasonably be considered so extreme as to permit recovery, so as to permit submission of the issue to the jury in the first instance." *Richard L. v. Armon,* 144 A.D.2d 1, 536 N.Y.S.2d 1014, 1017 (2d Dep't 1989).

Four elements comprise emotional distress claims: (1) an extreme and outrageous act by the defendant; (2) an intent to cause severe emotional distress; (3) resulting severe emotional distress; (4) caused by the defendant's conduct. *Conniff v. Dodd, Mead & Co.,* 593 F.Supp. 266, 269 (S.D.N.Y.1984). If plaintiff is to survive CSI's motion, she needs to show the existence of each of these elements. *See Rooney v. Witco Corp.,* 722 F.Supp. 1040, 1043 (S.D.N.Y.1989).

Plaintiff's claim fails without evidence of a deliberate and malicious effort to cause her injury. *See Mauala,* 559 F.Supp. at 1004. Sprouse, CSI argues, neither knew plaintiff nor intended to inflict mental harm upon her by holding its fashion show. CSI's Memorandum at 12–13; Sprouse Aff. ¶ 10; *Preston v. Martin Bregman Productions, Inc.,* 765 F.Supp. 116, 118 (S.D.N.Y.1991); *see Doe v. American Broadcasting Cos.,* 152 A.D.2d 482, 543 N.Y.S.2d 455, 455–56 (1st Dep't 1989), *app. dismd.,* 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (1989) (television station which inadvertently disclosed rape victim's identity during investigative report despite assuring her anonymity found not to have acted intentionally or deliberately); *see also Green v. Leibowitz,* 118 A.D.2d 756, 500 N.Y.S.2d 146, 148 (2d Dep't 1986). Plaintiff submits nothing to establish that CSI's purpose in using blood-like makeup was to cause her distress. She has not even established that Sprouse's models had blood running down their faces instead of just running from their mouths in the manner of vampires, as Sprouse claims. Nor has she rebutted Sprouse's assertion that he did not plan and was unaware of the "i.D" Magazine photograph of a model in a Sprouse fashion with blood running from her eye to her chin.

Additionally, plaintiff does not quarrel with Sprouse's assertion that his fashion show was intended to further his own interests: "[Sprouse] knew of the [assault] after it happened and apparently (and) callously capitalized upon it for his own fashion/business purposes." Plaintiff's Affirmation in Further Opposition ¶ 12. "If defendant's primary purpose was to advance its own business interests, and any conduct that harmed plaintiff was incidental, defendant has not committed the New York tort of intentional infliction of emotional distress." *Rooney,* 722 F.Supp. at 1040. Assuming that Sprouse's models were made up to appear as if they had been slashed, plaintiff has not shown that CSI's desire to harm her "was more than incidental to proper business motives." *See Rooney,* 722 F.Supp. at 1045 (quoting *O'Rourke v. Pawling Savings Bank,* 80 A.D.2d 847, 444 N.Y.S.2d 471, 472 (2d Dep't 1981)); *see Preston,* 765 F.Supp. at 120.

In *Preston,* 765 F.Supp. at 118, the plaintiff alleged that the movie "Sea of Love" contained footage of her strolling along a New York street "scantily dressed, showing her full face and entire body." The court dismissed her emotional distress claim, apparently premised upon the unauthorized use of her image, because it found that the defendants' motivation was its own business interests and not a desire to inflict harm. *See id.* Here, too, plaintiff argues that Sprouse exploited for his own benefit the notoriety he gained through plaintiff's unfortunate injury. *See* Plaintiff's Affidavit ¶ 33 ("without question defendant CSI and its principal, Stephen Sprouse, knew of the [assault] and utilized it for publicity purposes").

Because plaintiff bears the ultimate burden of proving her claim, she is obliged to "make a showing sufficient to establish the existence of the challenged element essential to that party's case." *See Mount Vernon Fire Ins. v. Creative Housing,* 797 F.Supp. 176, 179 (E.D.N.Y.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552) (internal brackets omitted). She fails to rebut CSI's contention that it lacked the intent to cause her mental distress, and thus her claim should be rejected.

*Conclusion*

For the foregoing reasons, I recommend that plaintiff be granted summary judgment

206

as to liability on her first claim, against Ryan. Pinkerton's motion for summary judgment, which relates to plaintiff's eighth claim, should be granted. Keeble Cavaco Duka's motion, relating to the twelfth claim, should also be granted. CSI's motion for summary judgment on the third, fourth, fifth and sixth claims should be granted. And Blanka Bernic should be granted summary judgment dismissing plaintiff's seventh claim.

Copies of this report have been mailed this date to the parties listed below, who are hereby advised of their right to file objections to this report with Judge Broderick on or before September 22, 1993. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e). Failure to object to this report by that date will preclude appellate review. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989).